FILED by    D.C.
ELECTRONIC

**Jan. 9, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 09-20067-Civ-MORENO/TORRES

LINDSAY JENKINS,

      Plaintiff,

   vs.

SHEILA BAIR
[IN HER OFFICIAL CAPACITY],
CONDOLEEZA RICE
[IN HER OFFICIAL CAPACITY],
JEFFREY COLBATH
[IN HIS OFFICIAL CAPACITY],
FEDERAL DEPOSIT INSURANCE CORP.,
DEUTSCHE BANK NATIONAL TRUST COMPANY,
ALLEN MATKINS LECK
 GAMBLE MALLORY & NATSIS,
INDYMAC BANK,
GEORGE ANDREWS,
RICHARD LANDMAN,
AKERMAN SENTERFITT,
OFFICE OF THRIFT SUPERVISION,
IMB MANAGEMENT HOLDINGS L.P.,
J. C. FLOWERS & CO., LLC,
PAULSON & CO. INC.,
MSD CAPITAL, LP
STONE POINT CAPITAL, LLC,
SSP OFFSHORE, LLC,
DUNE CAPITAL MANAGEMENT, LP,
STEVEN MNUCHIN,
SILAR MCG-I, LLC,

      Defendants.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

### Preliminary Statement

    Plaintiff had the misfortunate to become a borrower of

defendant IndyMac Bank (hereinafter "IndyMac"). Since then she

has been hounded by the vicious litigation storm troopers of defendant Deutsche Bank National Trust Company (hereinafter "Deutsche Bank" by and through defendants Allen Matkins Leck Gamble Mallory & Matsis, Akerman Senterfitt, George Andrews and Richard Landman (hereinafter collectively "the Akerman group"), and now faces the prospect of being attacked by a second wave of Wall Street operators led by Steven Mnuchin and his gang of investors including, but apparently not limited to, defendants Dune Capital Management, LLP, J.C. Flowers & Co., LLC, IMB Management Holdings, LP, Paulson & Co., Inc., MSD Capital, LP, Stone Point Capital, LLC, SSP Offshore, LLC, and Silar MCG-I, LLC, (hereinafter collectively the "Manuchin Group").

In all of this, defendant Sheila Bair has been either an unwitting or willing complicitor in her role as manager of the Federal Deposit Insurance Corporation ("FDIC"). The alleged regulator of the Manuchin Group, the Office of Thrift Supervision ("OTS"), has been a similarly supine regulator when faced with a secretive and illegally-operating collection of Wall Street speculators who are trying to "rip off" billions in public property and potential profits in the final days of the George W. Bush administration.

This lawsuit seeks to block the sale of IndyMac unless and until there is full disclosure of all of the beneficial owners of the Manuchin Group down to the third level, and until the

Case 1:09-cv-20067-XXXX Document XX Entered on FLSD Docket 01/12/2009 Page 3 of 24
3

ownership of any claims against Plaintiff are resolved and finally determined in a federal court.

Adding a second and independent layer of confusion has been the bizarre and unlawful actions of a Florida judge, William J. Zloch, who has defied federal law and the foreign relations of the United States, thereby triggering the addition of defendant Condoleeza Rice ("Rice") in her official capacity to this lawsuit, and a Florida state judge who is innocently embroiled at this time in the underlying conflicts. Defendant Jeffrey Colbath ("Colbath") is joined in his official capacity and injunctive relief is sought against him and any of his successors in interest or official position.

Money damages are not sought at this time from any of the defendants in this lawsuit arising out of the claims in this lawsuit (a separate previously-filed lawsuit seeks substantial damages). Rather, only declaratory judgment and injunctive relief are sought at this time.

### COUNT ONE

[CIVIL RACKETEERING]

Plaintiff Lindsay Jenkins sues the defendants, jointly and severally, individually and in their corporate capacities, as follows:

I.

## JURISDICTION, VENUE AND JURY DEMAND

A. This court has jurisdiction pursuant to the Civil Racketeering statute ("Civil RICO"), 18 U.S.C. § 1964, the Fair Debt Collection Procedures Act and diversity jurisdiction over companion common law claims.

B. With respect to the common law diversity claims, the amount in controversy, exclusive of interest and costs, exceeds $75,000 and the parties are citizens of different states or, in the case of Plaintiff, a foreign citizen.

C. Deutsche Bank does business in the United States and has solicited business within the Southern District of Florida as well as committing many of the RICO predicate acts in this District. Venue is therefore in this Court.

D. Plaintiff demands a jury trial.

II.

## FACTUAL ALLEGATIONS

A. The Parties

1. Plaintiff Lindsay Jenkins is a citizen of the United Kingdom and a homeowner in South Florida where she has resided part of the year for approximately twelve (12) years. She is a recognized expert in the financial markets and formerly was employed by Morgan Stanley as a pharmaceutical analyst.

2. Deutsche Bank has been named as a defendant herein through its United States affiliated trust company, Deutsche Bank National Trust Company of New York.

3. The unscrupulous law firms and lawyers named in this lawsuit are the Akerman Group, composed of Akerman Senterfitt and its lawyers, and Allen Matkins Leck. Plaintiff reserves the right to identify additional counsel as the facts in this lawsuit are further developed.

4. Indymac Bank was the bank that originally dealt with Plaintiff. That bank is now owned by the FDIC.

5. The Mnuchin Group is composed of a group of shadowy Wall Street speculators who may have contributed to the financial collapse on Wall Street in September, and now seek to profit in the waning days of the Bush administration by "ripping off" public assets for their own enrichment. The Manuchin group plans to take over "servicing" of Plaintiff's loan, even though the ownership of that loan has never been established in a court of law and remains in doubt. Bair, FDIC and OTS are willing accessories to the fraudulent activity of the Mnuchin Group. Plaintiff suggests this activity may be an effort to prolong Bair's federal employment by appeasing the Goldman Sachs influences in the incoming Obama administration.

6. Plaintiff and hundreds of thousands of innocent IndyMac customers are helplessly and hopelessly embroiled IndyMac's successors, including the Mnuchin group, as supine

federal regulators and arrogant judicial officials make matters worse by defying the law, refusing to apply the law or handing over public assets for private profit.

B. The actions of the defendants

1. Plaintiff has never had any business dealings with Deutsche Bank in the United States, and became the target of a surprise attack lawsuit filed in the Florida state courts.

2. Deutsche Bank and its principals and agents failed to provide any notice of its claim or interest in any matter involving plaintiff, and used a Plantation, Florida, law firm to harass, abuse and intimidate Plaintiff without any prior contact or notice from Deutsche Bank.

3. Deutsche Bank has been a worldwide leader in so-called derivatives, collateralized debt obligations, swaps and other mortgage and currency finagling that have contributed to a worldwide financial panic and, ultimately, a Wall Street collapse.

4. Unscrupulous Deutsche Bank law firms have terrorized thousands of homeowners across America by filing lawsuits that the attorneys knew to be defective, in the hope that the power and might of Deutsche Bank could improperly influence the law courts and crush innocent debtors. The actions of Deutsche Bank became so notorious in Ohio that there was extensive publicity about Deutsche Bank's activity in that state. Deutsche Bank's unlawful activity prompted federal judges

in Ohio to enjoin and restrain the types of corrupt and abusive litigation that was being initiated by DB's law firms. Plaintiff does not want to confront a second armada of corrupt and craven law firms acting for the Mnuchin Group seeking to terrorize her and extort her property.

5. The New York Times reported the "sale" of IndyMac bank to the secret group of buyers as a "giveaway" of public property for private profit by Wall Street speculators, see Exhibit A.

C. The Zloch circus

1. Federal law gives a U.K. citizen an absolute right to remove a case to the federal courts, 28 U.S.C.A. § 1332 (a)(2).

2. Federal law is an essential component of the foreign relations of the United States. Certainty and predictability of law affords foreign owners assurances as to where and how their claims will be heard; this predictability in turn fuels a great deal of the international investment in the United States. Plaintiff contemplates additional investment in the United States if the certainty of applicable law and legal remedies can be conclusively determined, and the circus-like proceedings of Zloch be prevented in the future.

3. William J. Zloch appears to believe he is an authority above Congress and the Secretary of State, and that he is free to suspend federal laws at his own whim and caprice.

Zloch has attempted to deny Plaintiff her rights under federal law. Zloch appears to be predisposed to the claims of the Akerman group.

4. The Akerman group has sought to defraud and corrupt defendant Colbath, and to importune him to act in an unlawful manner.

III.

LEGAL CLAIM

A. The RICO enterprise

1. The RICO enterprise in this lawsuit is an "association in fact" of the defendant IMB Management Holdings and its related owners and investors, its officers, directors and employees, their associated law firms, and persons acting in concert and conspiracy with them.

2. Prior to filing this lawsuit, Plaintiff conducted extensive due diligence and research. She found, for example and not by way of limitation, that there is no public record of who owns IMB, and that Bair and the FDIC have refused to make public the secret deals and arrangements which are the fruits of possibly illegal activity, see Exhibit B ("FDIC officials said full details of the agreement would be withheld…").

3. Due to the unknown nature of the connections between Deutsche Bank and the other defendants, and their refusal to clarify or establish any relationship with the

Plaintiff, the Mnuchin defendants are associated in fact with the ongoing and apparently expanding RICO activity.

4. To the best of Plaintiff's knowledge, defendants Rice and Colbath are not associated in any form at this time with any RICO activity. Their relationship to the dispute arises in the second phase of the controversy and these defendants and their successors in office and status are sued solely in their official capacity.

B. Interstate commerce

The actions and impact on interstate commerce of the defendants is pervasive and apodictic.

C. The predicate acts

1. Mail fraud

a. Well knowing their conduct and combination constituted a scheme and/or artifice to either loot, or aid and abet in the looting of the Plaintiff's homestead through fraudulent litigation and other unlawful activity, defendants have used the U. S. Postal Service to commit repeated and continuing acts of mail fraud, all in furtherance of the scheme or artifice to defraud Plaintiff and others involved with or interested in Plaintiff's homestead, and all in violation of 18 U. S. C. § 1341. These criminal acts are continuing. Indeed, the secret and conspiratorial operations of the Mnuchin group add significant layers of new fraudulent and corrupt activity to the potential claims arising from IndyMac Bank's "sale."

b. The actual mailings through the U. S. Postal Service will be specified as part of the reciprocal discovery process in this action. There have been dozens of fraudulent mailings in furtherance of the scheme and/or artifice to defraud Plaintiff.

c. The defendants have manifested scienter of the fraudulent and unlawful nature of their continuing pattern of activity. The Mnuchin Group is composed of secret entities whose beneficial owners are unknown, and whose registrations, or in some cases business operations, are apparently being conducted in flagrant violation of New York law. A records check for SSP Offshore, LLC shows that George Soros has apparently not registered SSP in either New York or Delaware. Evidence of concealment is strong circumstantial evidence of scienter, fraudulent intent and the awareness of illegal conduct.

d. The Deutsche/Akerman defendants have harassed, abused and terrorized thousands of similarly situated Americans with similarly malicious and vicious litigation using the USPS. The Mnuchin group apparently seeks to take up where the Deutsche Bank predators leave off.

e. Although IndyMac has a "loan modification portal," no modifications have ever been offered to Plaintiff through IndyMac and it appears that Bair's and the FDIC's loan modification operation is a sham and a fraud on congressional overseers.

2. Wire fraud

a. Well knowing their conduct and combination constituted a scheme and/or artifice to either loot, or aid and abet in the looting of Plaintiff's homestead, defendants have used interstate telecommunications facilities to commit repeated and continuing acts of wire fraud, all in furtherance of the scheme or artifice to defraud Plaintiff and others involved with or interested in Plaintiff's homestead, and all in violation of 18 U. S. C. § 1343. These criminal acts are continuing. Indeed, the secret and conspiratorial operations of the Mnuchin group add significant layers of new fraudulent and corrupt activity to the potential claims arising from IndyMac Bank's "sale."

b. The actual interstate communications will be specified as part of the reciprocal discovery process in this action. There have been dozens of fraudulent interstate wire communications in furtherance of the scheme and/or artifice to defraud Plaintiff.

c. The defendants have harassed, abused and terrorized thousands of similarly situated Americans with similarly malicious and vicious litigation using interstate and international wire communications.

3. Extortion

Well knowing their conduct constituted a combination and conspiracy to commit criminal acts against the Plaintiff, all in violation of 18 U. S. C. § 1951, the Deutsche

Bank defendants, and potentially the Mnuchin Group acquirers, and their agents, employees and associates, have sought to or may in the future seek to terrorize, harass and extort the Plaintiff through concocted and fraudulent judicial proceedings, all under color of official right, to wit:

a. Defendants sent a "process server" to Plaintiff's home and sought to threaten Plaintiff with the claim that the server was acting pursuant to the order of the Chief Judge of a local court, when the process server was in reality a private process server.

b. On or about May 16, 2008 at approximately 2:34 P.M. the defendants attempted a home invasion of Plaintiff's home by falsely representing to her security guard that they were there to "inspect" Plaintiff's homestead. Plaintiff was placed in terror of an imminent home invasion.

c. On or about May 23, 2008 at approximately 12:06 P.M. the defendants attempted a home invasion of Plaintiff's home by falsely representing to her security guard that they were there to "inspect" Plaintiff's homestead. Plaintiff was placed in terror of an imminent home invasion.

d. The Deutsche/IndyMac defendants took these steps to invade Plaintiff's premises at a time when both the Plaintiff and the defendants had lawsuits pending; Deutsche/IndyMac were attempting to engage in extra-judicial self-help in violation of federal and state law. Any agents of

the defendants who were involved in the actual attempted invasions were acting pursuant to the direction of someone within the defendants' circle of associates (law firms, process servers, etc.).

### D. The RICO injury

Plaintiff has been injured in her property and business through the ongoing and continuing criminal acts of the defendants acting in concert and conspiracy with each other. The prospective entry of the Mnuchin Group into the RICO operation provides a basis for protective declaratory and injunctive relief.

IV.

### DEMAND FOR JUDGMENT

A. Plaintiff demands sufficiently broad and all-encompassing declaratory and injunctive relief as to remove any of the claims of any of the defendants against her.

B. Plaintiff does not demand any money damages at this time.

### COUNT TWO

### [FAIR DEBT COLLECTION PROCEDURES ACT]

Plaintiff repeats and realleges ¶¶ I-II of Count One and further states:

III.

## LEGAL CLAIM

A. The Fair Debt Collection Practices Act ("FDCPA") prohibits both specific conduct and generalized abusive behavior by creditors.

B. Threatening to place a party under "surveillance," as well as canvassing neighbors about a party, appear to be direct violations of the FDCPA. Using what appears to be a judge's calling card is the type of misleading activity also prohibited by the FDCPA.

C. While the Deutsche/IndyMac/Akerman defendant lawyers have tried to take refuge in a safe harbor by claiming that their lawsuit is an "initial communication" under the FDCPA, that claim does not excuse the prior behavior of the defendants in scheming to file a lawsuit for the purposes of harassment and abuse, and without any verification of any amount owed and without any disclosure of the legal status of the party filing the lawsuit. The defendant attorneys, moreover, are fully liable for the fraudulent acts of their process server.

D. A lawsuit in which a party fails to disclose any detail concerning its legal interest, if any, in a claim is a presumptive violation of the FDCPA.

E. Among the amounts apparently sought to be collected by the defendants are inflated insurance premiums that were added to plaintiff's bill, and backdated unlawfully to increase and

inflate a claim, all for the benefit of an interested party to Indymac Bank, as well as the Akerman Group's fraudulent and inflated legal bills.

F. The Mnuchin Group operators apparently plan to hire a new round of unscrupulous operators to extort and harass borrowers from IndyMac. The only way Mnuchin and his co-conspirators can make money is through abusive collection techniques and judicial terrorism against innocent and helpless borrowers; Bair's "sale" provides no protection for these IndyMac victims.

IV.

## DEMAND FOR JUDGMENT

A. Plaintiff demands sufficiently broad and all-encompassing declaratory and injunctive relief as to remove any of the claims of any of the defendants against her.

B. Plaintiff does not demand any money damages at this time.

## COUNT THREE

### [COMMON LAW MALICIOUS FORECLOSURE]

Plaintiff repeats and realleges ¶¶ I-II of Count One and further states as to ¶ II:

C. The Zloch circus

5. When plaintiff removed her claims to this Court, William Zloch stated that federal law did not apply to him, the decisions of the Eleventh Circuit did not bind him and that he

was free to do as he pleased irrespective of a clearly applicable federal statute affording plaintiff a federal forum.

6. Zloch's bizarre behavior creates uncertainty in the foreign relations of the United States, and uncertainty for any investor who might be exposed to Zloch's bizarre and inexplicable and possibly even corrupt behavior. Zloch is in office to enforce federal law, not violate it.

III.

LEGAL CLAIM

A. The Deutsche/Akerman defendants acted wrongfully and maliciously by filing a lawsuit against plaintiff without ever contacting her, or without even having documents in their possession establishing their ownership or their alleged ownership interest or any recorded interest in her property to justify filing a lawsuit. Deutsche Bank claims to be suing as a "trustee," but has not disclosed the existence of any trust, furnished any trust agreement, or another other documentation normally associated with litigation in a fiduciary capacity. On the contrary, the defendants have refused to provide such evidence of ownership to the Plaintiff thereby compelling her to file lawsuits to protect her substantive and procedural rights.

B. The actions of Deutsche Bank amount to judicial terrorism, perpetuated by unscrupulous and Nazi-style law firms that file lawsuits to harass, terrorize and abuse persons who

have not had any prior contact with either the law firm or Deutsche Bank.

C. Because Plaintiff disputes the amount of any lawful liability to IndyMac Bank, the filing of a lawsuit by an unidentified entity having had no prior contact or relationship with plaintiff was wrongful, malicious and abusive. Indeed, the defendants' lawsuit against Plaintiff is itself defective on its face because it fails to identify the nature and extent of the interest acquired by Deutsche Bank, from whom, and when; the case further fails to provide any documentation for any basis to file a bona fide lawsuit against Plaintiff.

D. If the facts giving rise to this lawsuit were the first lawsuit that Deutsche Bank has unlawfully filed, this Court might tend to be more lenient in assessing liability and damages. Deutsche Bank, however has become America's most vicious and pervasive litigant.

F. The Germany-based management committee, directors and United States-based financial finaglers of Deutsche Bank have totally abdicated their fiduciary duties both under German and United States law to shareholders and stakeholders; they have egregiously and unlawfully violated their allegedly contractual obligations to Plaintiff, with whom defendants claim to be in privity. Parties to a contract, including assignees, are under a continuing duty to act fairly and in good faith. The defendants have failed to do so.

G. Defendants have never provided any evidence to anyone that they actually own the loan in question concerning which they have been so viciously and maliciously litigating for a year. A party to a contract has a right to notice of assignment of the opposing party's rights and obligations. The refusal of defendants to document their claims would cause a reasonable and prudent person to suspect that there is no evidentiary basis to support the defendants' litigation.

H. Despite failing to produce any evidence of ownership, and filing boilerplate claims by the law firm of Allen Matkins that the documents have been "lost" (where, when, by whom?) defendants have sought to harass and intimidate federal and state judges into ruling in their favor when there is no legal basis for any such requests.

I. The abusive actions of the defendants prompted federal judges in the Northern District of Ohio to enter a supervisory order ("General Order") barring the type of pending and prospective collection activity manifested by the defendants herein. The Hon. Kathleen O'Malley dismissed proceedings similar to the defendant Deutsche Bank's foreclosure claims against Plaintiff for failure to comply with said General Order by first documenting DB's claim to ownership. The General Order would appear to be binding on all defendants in all United States courts.

J. Bair and the FDIC are now proposing through the suspicious "sale" of IndyMac for what amounts to 90% seller financing to create yet another litigation firestorm by authorizing the predators of the Mnuchin group to assume control of "servicing" IndyMac's clouded and disputed claims.

IV.

DEMAND FOR JUDGMENT

A. Plaintiff demands sufficiently broad and all-encompassing declaratory and injunctive relief as to remove any of the claims of any of the defendants against her.

B. Plaintiff does not demand any money damages at this time.

C. Plaintiff asks that this Court enjoin the all of defendants from filing any further lawsuits or claims against Plaintiff, enjoin the state courts from proceeding with any pending actions against Plaintiff and further enjoining the defendants by directing them to erase and vacate or release any claims that they have previously asserted in state courts.

D. Plaintiff seeks a declaratory judgment against defendant Rice in her official capacity as Secretary of State that pursuant to foreign relations and federal law, Plaintiff has a clear and absolute right under the "diversity of jurisdiction" statute to have her claims heard in a federal court, 28 U.S.C.A. § 1332 (a)(2).

D. Plaintiff asks for such additional relief as may be necessary and proper to do complete justice between the parties, including, but not limited to, an injunction against defendant Colbath in his official capacity and any of his successors in their official capacity, enjoining them from hearing or proceedings with any of the claims involving Plaintiff due to her choice of a federal forum.

Dated: January 9, 2009

Respectfully submitted,

LINDSAY JENKINS
300 Burns Street
Forest Hills, NY 11375
Toll-free tel. (888) 552-2194
Toll-free fax  (888) 696-3799
(fax not to exceed 10 pp.)

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.

PRINTER-FRIENDLY FORMAT
SPONSORED BY 

January 8, 2009

BREAKINGVIEWS.COM
# Buying IndyMac at a Bargain Price

By LAUREN SILVA LAUGHLIN and RICHARD BEALES

The private equity firms buying IndyMac, the failed California-based bank, will get loans and securities with a face value of $23 billion, and a couple of mortgage businesses for an outlay of just $1.6 billion in cash. The Federal Deposit Insurance Corporation also handed them several other benefits. But the F.D.I.C. may have been too soft on the buyers.

First, J.C. Flowers, Paulson and others are paying what looks to be a low headline price of $13.9 billion, including assumed liabilities, for IndyMac's $16 billion loan portfolio, $6.9 billion of securities and two mortgage servicing platforms. That suggests a discount from face value of a minimum of 40 percent on the loans and securities.

But the discount on those assets is probably even greater. Last March, the investor Wilbur Ross bought Option One, which has a mortgage servicing business about a third the size of IndyMac's, for $1.1 billion. Extrapolate that to IndyMac's servicing business as a rough comparison, and it implies a value of roughly $3 billion.

That would mean the private equity buyers are paying about $11 billion for IndyMac's loans and securities, or about a 55 percent discount from face value. Depending on the details of the assets, even in a dire market that could be a bargain.

The deal echoes some that were struck during the last American banking crisis, in the early 1990s, but the F.D.I.C. now appears to be giving more away. Last time around, the F.D.I.C. or other government agencies retained significant upside, as well as sharing losses.

By contrast, IndyMac's buyers will bear the first 20 percent of any future write-downs on about $13 billion of the loans. Beyond that, though, the lion's share of losses will be borne by the F.D.I.C. But the agency will share only in the profits associated with a $2 billion collection of loans.

The F.D.I.C. is also leaving in place a $6 billion loan to IndyMac that could be hard to refinance. Throw in IndyMac's deposit liabilities of more than $6 billion, and that leaves only $1.6 billion of the $13.9 billion of assets for the buyers to fund with new cash. On top of that, the buying group has applied for a federal holding company charter for its acquisition vehicle. That could eventually bring the buyers tax benefits too.

The F.D.I.C. says the deal allows it to rid itself of hard-to-sell assets, including IndyMac's portfolio of troublesome Alt-A mortgages. The agency had already sunk about $9 billion from its insurance fund into IndyMac, so while it did shop the bank to a range of possible buyers, it may have understandably been in a hurry to return it to private hands. Perhaps that justifies some of F.D.I.C.'s concessions. But assuming no one steps in with a better offer this time, the agency should aim to strike a harder bargain next time.

EXHIBIT A

www.chicagotribune.com/business/chi-sat-indymac-0103-jan03,0,4266757.story

# chicagotribune.com

## Private investors to pay FDIC $13.9 billion for IndyMac

By E. Scott Reckard

Tribune newspapers

January 3, 2009

A group of private investors agreed Friday to buy IndyMac Bank, the Pasadena, Calif., specialist in exotic home loans that collapsed in July and became the third-largest bank to fail since the government began insuring deposits in 1934.



WHAT'S IN THE STARS FOR YOU?

Download Chicago Tribune's Mobile Zodiac iPhone App today to read your daily horoscope.

App Store

The Federal Deposit Insurance Corp., which has run IndyMac since its collapse, said the bank would be purchased by IMB Management Holdings, a New York-based partnership led by buyout expert J. Christopher Flowers, hedge fund operator John Paulson and Steven Mnuchin, chairman of private-equity company Dune Capital Management.

IMB Management Holdings and the investor group will inject about $1.3 billion in capital into the emerging bank and form a new holding company that will own and operate it under a thrift charter. What is being called New IndyMac also will bring in "an experienced senior management team to run the day-to-day operations of the thrift," according to a statement issued by the FDIC.

Under the complex deal, the buyers will pay the FDIC about $13.9 billion and will share losses with the FDIC. The bank will assume the first 20 percent of losses, after which the FDIC will absorb the lion's share of losses.

FDIC officials said full details of the agreement would be withheld until the deal's expected close in late January or early February.

The agency said IndyMac's cost to the federal deposit insurance fund would be $8.5 billion to $9.4 billion, in line with previous loss estimates of $8.9 billion.

Uninsured IndyMac depositors will have to wait to see how much of their losses they may recover, FDIC officials said. The depositors have been repaid 50 percent of the $541 million in uninsured funds that the FDIC determined was held in IndyMac accounts.

Mnuchin is a former Goldman Sachs real-estate fund manager. His Dune Capital, known for opportunistic real estate investments, bid unsuccessfully for Donald Trump's casino company last year.

EXHIBIT B

Paulson made billions of dollars betting on a downturn in housing and mortgages, and he provided $15 million in October 2007 to help advocacy group Center for Responsible Lending establish the Institute for Foreclosure Legal Assistance.

Flowers has cultivated investments in troubled banks. He led an investor group that created Shinsei Bank Ltd. in 2000 from the ruins of Japan's collapsed Long Term Credit Bank, and his J.C. Flowers & Co. bid unsuccessfully to buy Bear Stearns before the securities enterprise collapsed last year. Regulators recently gave him the go-ahead to personally purchase a small Missouri bank, perhaps as a platform to buy failed institutions.

*Los Angeles Times*

Copyright © 2009, Chicago Tribune

**CIVIL COVER SHEET**

%JS 44 (Rev. 2/08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

FILED by ___ D.C.
ELECTRONIC

**Jan. 9, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS

Lindsay Jenkins

## DEFENDANTS

Sheila Bair, et al.

(b) County of Residence of First Listed Plaintiff   **Palm Beach**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Washington, DC
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Pro se, Lindsay Jenkins, 300 Burns Street, Forest Hills, NY 11375; Tel. (888) 552-2194, Fax (888) 696-3799

Attorneys (If Known)

(d) Check County Where Action Arose: ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

*09 CV 20067 FAM/EGT*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☑ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus-Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☑ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☑ YES ☐ NO

JUDGE Gold Docket No. 07-22463   DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

This is a civil RICO action for abusive mortgage activity.

LENGTH OF TRIAL via _3_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   January 9, 2009

FOR OFFICE USE ONLY

AMOUNT 350.ᵃ   RECEIPT # 725293   IFP